WILKINSON, Circuit Judge,
concurring:
I agree that the dismissal of Andrew’s First Amendment claims was premature. In Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the employee spoke on a matter as a part of his official duties. Here, as the court notes, that is very much in dispute. In Garcetti, the employee did not distribute the statement to a news organization. Here he did. And the matter about which Andrew spoke was not just an office quarrel or routine personnel action, but a question of real public importance, namely whether a police shooting of a citizen was justified and whether the investigation of that shooting was less than forthcoming.
To throw out this citizen who took his concerns to the press on a motion to dismiss would have profound adverse effects on accountability in government. And those effects would be felt at a particularly parlous time. It is well known that the advent of the Internet and the economic downturn have caused traditional news organizations throughout the country to lose circulation and advertising revenue to an unforeseen extent. As a result, the staffs and bureaus of newsgathering organizations — newspapers and television stations alike — have been shuttered or shrunk. Municipal and statehouse coverage in par *273 ticular has too often been reduced to low-hanging fruit. The in-depth investigative report, so essential to exposure of public malfeasance, may seem a luxury even in the best of economic times, because such reports take time to develop and involve many dry (and commercially unproductive) runs. And in these most difficult of times, not only investigative coverage, but substantive reports on matters of critical public policy are increasingly shortchanged. So, for many reasons and on many fronts, intense scrutiny of the inner workings of massive public bureaucracies charged with major public responsibilities is in deep trouble.
The verdict is still out on whether the Internet and the online ventures of traditional journalistic enterprises can help fill the void left by less comprehensive print and network coverage of public business. While the Internet has produced information in vast quantities, speedy access to breaking news, more interactive discussion of public affairs and a healthy surfeit of unabashed opinion, much of its content remains derivative and dependent on mainstream media reportage. It likewise remains to be seen whether the web — or other forms of modern media — can replicate the deep sourcing and accumulated insights of the seasoned beat reporter and whether niche publications and proliferating sites and outlets can provide the community focus on governmental shortcomings that professional and independent metropolitan dailies have historically brought to bear.
There are pros and cons to the changing media landscape, and I do not pretend to know what assets and debits the future media mix will bring. But this I do know — that the First Amendment should never countenance the gamble that informed scrutiny of the workings of government will be left to wither on the vine. That scrutiny is impossible without some assistance from inside sources such as Michael Andrew. Indeed, it may be more important than ever that such sources carry the story to the reporter, because there are, sad to say, fewer shoeleather journalists to ferret the story out.
So I concur in Judge Alarcon’s fine opinion, because it recognizes this core First Amendment concern with the actual workings — not just the speeches and reports and handouts — of our public bodies. This case may seem a small one, involving a single incident in a single locality, but smaller cases are often not without larger implications. The court is right to note that at this early stage, we cannot foresee who will prevail. But as the state grows more layered and impacts lives more profoundly, it seems inimical to First Amendment principles to treat too summarily those who bring, often at some personal risk, its operations into public view. It is vital to the health of our polity that the functioning of the ever more complex and powerful machinery of government not become democracy’s dark lagoon.